No. 177.—MAKLER AND HUSBAND *v.* McCLELLAND, Tutor, et al.

A vendor of real estate in order to defeat the mortgagee of his vendee, on the ground of fraud in the sale of the property, must show that the mortgagee was aware of the fraud at the time the contract of mortgage was made.

APPEAL from the Tenth Judicial District, Parish of Caddo. *Taylor,* J., vice *Levisee,* J., recused. *A. W. O. Hicks,* for plaintiffs and appellants. *Nutt & Leonard,* for defendants and appellees.

TALIAFERRO, J. The plaintiffs enjoined a writ of seizure and sale taken out by the defendant in his representative capacity on an obligation entered into by the agent of one Bedell, and secured by mortgage on real estate which the plaintiff Magdelena Makler, late widow Miller, alleges belongs to her. There was a general denial by the defendant. Judgment was rendered in the court below in favor of the defendant, and plaintiffs have appealed.

Wright, acting in the capacity of agent under a power of attorney from Bedell, obtained a loan of money from Logan, father of the minor, for the payment of which he executed on the part of his principal a promissory note for $2200, payable in sixty days, and to secure the payment executed a mortgage on certain property in Shreveport. This property, it seems, was the same or part of the same, which Mrs. Makler, during her widowhood, sold to Bedell by deed, bearing date thirteenth June, 1866. There is now before this court a suit by Mrs. Makler to annul and set aside that sale on the ground of the grossest fraud and deception practiced upon her by Bedell, who, as she alleges, resorted to every species of chicanery, falsehood and imposition to cheat and swindle her out of her property ; that she was overreached by his duplicity and induced to sign the act of sale referred to, and has never received one cent for the property which she has thus been foully and wickedly deprived of. The evidence taken on the trial of that case is introduced as evidence in this, and it presents a deplorable spectacle of the ignorance and fatuity of a weak and credulous woman on the one side, and the cool villainy and impudence of an adventurer on the other. That the party complaining has been swindled, there is no room to doubt. The grounds, set up for obtaining the injunction are various, and are as follows :

*First*—That the agent exceeded his authority in borrowing money; that the loan was not applied to the purposes for which it was obtained; that the lender was aware of this. And the inference made by plaintiff is that he loaned his money in bad faith.

*Second*—That it does not appear from the note, mortgage or any authentic evidence that the sum of $2200 was borrowed money.

*Third*—That the agent was not authorized to execute the mortgage, nor to contract to pay more than eight per cent. for the loan.

*Fourth*—Because the note was given for more money than was received for the use of Bedell or was intended for his use, and that this was known to Logan, the lender.

*Fifth*—That the property mortgaged by the agent was not in the possession of Bedell at the time the order of seizure was granted.

*Sixth*—Because Alice, the minor child of Logan, had reached the age of puberty at the time the order of seizure issued, and B. F. Logan, the other minor, had, at that time, been emancipated. Therefore, the minor Alice was not a party, and B. F. Logan was unassisted by a tutor.

*Seventh*—That the mandate, mortgage and supposed judgment are a fraud upon the rights of Mrs. Maklin, conceived and perpetrated by Bedell, Surtin, Lawrence Bayliss and Logan for the purpose of injuring, cheating and defrauding her.

*Eighth*—Because of the non-payment of the price by Bedell, the price not having been paid or tendered.

Unsupported, as most of these asseverations seem to be by evidence, we think they have but little force. The important inquiry is, was Logan, the lender of the money, a party to the fraud alleged, or had he at the time of lending the money knowledge of the fraud practiced upon the complainant? Mrs. Miller sold to Bedell thirteenth June, 1866. Payment of the price is acknowledged. Wright's power of attorney is full and ample, general and special, covering all the acts he performed in his capacity of agent. The contract of loan and mortgage was consummated on the third of July succeeding the sale to Bedell. The mortgage contains the pact *de non alienando*.

A close scrutiny of all the evidence adduced in this case fails to assure us that Logan had knowledge or notice of the fraud. The only notice or knowledge he is shown to have had of Bedell's title to the property was that which he and others are supposed to have from the fact that that title was of record in the proper office, and that it declares that Bedell had bought the lots from Mrs. Makler, and had paid her for them; and because the purchaser had exercised one of the essential powers of ownership in granting to an agent the authority to mortgage it to any extent. No such circumstances of suspicion as would have led a prudent man to further investigation before parting with his money on the security of such a title is shown. It is shown that he lived near Shreveport, and had lived there for a number of years; that he was a farmer and a money lender, a keen, shrewd man; a note shaver, and therefore likely in all transactions of the sort to look well

to "the sufficiency of the bond." It is in proof that a proposition was made by Lawrence to Hope, the partner of Tally (a witness of the plaintiff), to advance money on mortgage upon this property before the loan was obtained from Logan. Tally in his testimony says:

"The general opinion of the community of Shreveport was that Mrs. Miller had been swindled in the sale by her to Bedell, and I would not have anything to do with the property in consequence of this general belief." He states also "that the sale from plaintiff to Bedell was not generally known or much talked about until she brought suit to annul it."

It is unfortunate that the plaintiff, through her ignorance and improvident conduct, has placed it in the power of her deceiver to perpetrate frauds upon innocent third parties. Her admissions are also unfortunate, that not being able to raise money upon her property, and being in need, she had placed the title in Bedell in order to procure money; thus in effect admitting that the sale to Bedell was a simulation, she being a party to it. Unintentionally, no doubt, she has placed it out of her power now, in contests with third parties without knowledge of the fraud practiced upon her, to deny the declarations made by her in the deed announcing that she had sold her property to Bedell and received payment for it. In such a state of things, the law can afford her no relief. As to all that the evidence shows, Logan or his representatives are free from any imputation of complicity with the parties guilty of the fraud in question or of any knowledge or notice thereof. She therefore cannot be relieved from the effect of Bedell's mortgage of the property to Logan. The case of William E. Leverich v. Clemence Toby, 6 Ann. 462, is closely in point to this case. See Foster v. Foster, 11 L. 408. Stockton v. Craddock, 4 An. 285.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed with costs in both courts.